UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE G, LLC d/b/a<br>GEORGE THE SALON,<br><br>   Plaintiff,<br><br>   v.<br><br>GEORGE CHARLES SALON INC.,<br><br>   Defendant. | Case No. 1:21-cv-02651<br><br>Judge John Robert Blakey |

**<u>MEMORANDUM OPINION AND ORDER</u>**

On the corner of Rush and Oak Streets, Plaintiff George G, LLC (d/b/a "George the Salon") ("Plaintiff") sits perched within Chicago's popular Gold Coast neighborhood. [1] ¶¶ 2, 8. For over thirteen years, Plaintiff has provided residents of Chicago—and beyond—with salon and spa services under the "George the Salon" name. *Id.* ¶ 6. A short 100 feet away, Defendant George Charles Salon Inc. ("Defendant") also provides residents of Chicago—and beyond—with salon and spa services. *Id.* ¶¶ 4, 13, 15, 22. The two salons, George the Salon and George Charles Salon, directly compete with one another, within view of one another. *Id.* ¶¶ 4, 15. Herein lies the present dispute.

In May of 2021, Plaintiff filed suit, alleging: (1) trademark infringement under 15 U.S.C. § 1051 *et seq.* (Count I); (2) unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a) (Count II); and (3) Illinois state statutory and common law trademark infringement, unfair competition, and deceptive trade

1

practices (Count III). [1] ¶¶ 25–58. Defendant promptly moved to dismiss [18]. For the reasons stated below, the Court denies Defendant's motion.

I. **Factual Background**[1]

In 2008, Mr. George Gonzalez opened "George the Salon." [1] ¶¶ 5, 6. The salon provides spa services to its clients, including cut, color, styling, extensions, skin care, and massages. *Id.* ¶ 5. In the intervening years, Plaintiff "has spent an enormous amount of time, resources, and effort to establish its reputation for high-quality services and care" and has used its name "in connection with all aspects of its salon and spa business." *Id.* ¶¶ 5–6. Specifically, Plaintiff uses "George the Salon" in "advertisements, promotional materials, Facebook, Instagram, on its website, answering the phone, word of mouth, and elsewhere in connection with its business." *Id.* ¶ 7. As a result of these efforts, "Plaintiff has developed significant goodwill, reputation, and name recognition in the salon and spa business, such that the 'George the Salon' name is associated with Plaintiff and Plaintiff's services." *Id.* ¶ 5.

Plaintiff alleges that it is "the owner of all right, title, and interest in and to . . . the name 'George the Salon,' as well as related trade names, designs, symbols, and logos used by Plaintiff by virtue of its extensive advertising and sale of salon and spa services provided under such trade names, trademarks, designs, symbols, and logos." *Id.* ¶ 54. Plaintiff provides that, due to its "extensive sales and publicity, [it] has acquired common law trademark rights in and to the name 'George the Salon' and confusingly similar variations thereof for its services." *Id.*

---

[1] The Court draws these alleged facts from Plaintiff's complaint [1].

2

In addition, Plaintiff holds the registration for U.S. Trademark No. 3,541,542 (the "'542 Mark"). The '542 Mark (reproduced below) is a service mark covering "hair salon services, namely, hair cutting, styling, coloring, and hair extension services," among other spa-related services. *Id.* ¶ 9; [22-1].[2] The '542 Mark consists of "G George the Salon" with all letters of "George" in black, but for the letter "O" which appears in orange and "with stylization of no significance." [22-1]. The registration provides that "[n]o claim is made to the exclusive right to use 'the salon', apart from the mark as shown" and further that "[t]he color(s) orange and black is/are claimed as a feature of the mark." *Id.* The complaint states that the '542 Mark has become incontestable pursuant to 15 U.S.C. § 1065. [1] ¶ 10.



[22-1].

---

[2] Ordinarily, a district court may not consider matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The Seventh Circuit has repeatedly recognized, however, that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Id.*; *see also Wright v. Associates Ins. Co. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Additionally, "a district court [may] take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Here, both parties purported to attach the '542 Mark's registration, [18] at 4, [22] at 3, [22-1], which is referred to in the complaint, [1] ¶ 9. The Court can thus properly consider the registration. *Slep-Tone Entm't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 904 (N.D. Ill. 2014) (noting that courts may properly take judicial notice of official records of the United States Patent and Trademark Office).

Despite these rights, Plaintiff asserts that Defendant "is advertising and providing, without authorization or license, salon services in interstate commerce (including in this judicial district) under the name 'George Charles Salon' that is confusingly similar to Plaintiff's services offered under the '542 Mark and the 'George the Salon' name." [1] ¶ 13. Specifically, Defendant's use of the name "George Charles Salon" in connection with its services "has caused and is likely to cause confusion, mistake, or deception among the consuming public, and creates the false impression that the [services] are authorized, sponsored, or approved by Plaintiff." *Id.*

According to Plaintiff, Defendant's infringement is willful: "[I]n an effort to confuse the public, deceptively pass itself off as Plaintiff, and unfairly capitalize on Plaintiff's significant goodwill and reputation for high-quality services and care, Defendant opened its salon business under the infringing name 'George Charles Salon' 100 feet away, and directly across the street, from Plaintiff's long-standing and highly recognized salon." *Id.* ¶¶ 15–16, 46, 50. In March, Plaintiff sent Defendant a letter "notifying Defendant that its use of the 'George Charles Salon' name in connection with its salon and related services infringes upon the '542 Mark." *Id.* ¶ 16. In response, "Defendant's infringement persisted, without competent advice of counsel, leaving Plaintiff no choice but to file this lawsuit." *Id.*

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," so that defendant has "fair notice" of the claim "and the

4

grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). This plausibility standard "is not akin to a 'probability requirement,' but asks for more than a sheer possibility that the defendant has acted unlawfully." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action," and "mere conclusory statements, do not suffice." *Id.* In evaluating a motion to dismiss, the Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).

### III. Analysis

The complaint includes three causes of action: (1) trademark infringement under the Lanham Act (15 U.S.C. § 1051 *et seq.*); (2) unfair competition and false designation of origin arising under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and (3) state statutory and common law trademark infringement, unfair competition, and deceptive trade practices. [1] ¶¶ 25–58.

Although Defendant moved to dismiss the entire complaint, [18], each of the claims at issue in this motion involve the "same elements and proofs." *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1012–13 (N.D. Ill. 2014) (citing *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993) (holding

5

that the elements of a state unfair competition claim mirror those of federal statutory trademark infringement)); *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (the "same analysis applies" to (1) federal trademark infringement claim; (2) federal unfair competition claim; (3) unfair competition and deceptive trade practice claims under Illinois law; and (4) trademark infringement and unfair competition claims under Illinois common law). Because each cause of action alleged here requires the same elements of pleading, this Court will assess the viability of all counts as one. *KJ Korea*, 66 F. Supp. at 1012.

To state a claim for trademark infringement and unfair competition under each of these theories, a plaintiff must allege that: (1) it has a protectable right in the asserted trademarks; and (2) the defendant's use of the mark is likely to cause confusion. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).

### A.  Protectable Mark

A plaintiff sets forth a protectable mark by alleging the mark is: (1) registered with the USPTO, which provides prima facie evidence of validity, ownership and exclusive right to use the registered mark; (2) registered in the Supplemental Register, which does not receive the presumption of validity associated with a registered mark because it is only "capable" of becoming a trademark; or (3) unregistered but nevertheless entitled to protection under Section 1125 of the Lanham Act. *Top Tobacco v. Fantasia Distrib. Inc.*, 101 F. Supp. 3d 783, 788 (N.D. Ill. 2015) (citing *KJ Korea*, 66 F. Supp. 3d at 1013).

With respect to the '542 Mark, Plaintiff asserts that the mark is registered with the USPTO, remains "in full force and effect" and has become incontestable pursuant to 15 U.S.C. § 1065. [1] ¶¶ 9–10. In view of the registration, Plaintiff has a presumed protectable right to the mark under § 1057(b), and Defendant does not dispute that fact. *See Top Tobacco*, 101 F. Supp. 3d at 789; [18] at 5 (the registration of the '542 Mark "establishes valid trademark registration of a specific design mark").

As for "George the Salon," the mark appears to be unregistered. [1] ¶ 54; [22] at 4 (discussing protectability of unregistered marks). An unregistered mark can form the basis of a trademark infringement claim where the plaintiff demonstrates that the "mark [i]s distinctive enough to warrant protection under the Lanham Act and that it has proper ownership of the mark." *Brithric Enterprises, LLC v. Bay Equity LLC*, No. 20-CV-04696, 2021 WL 1208957, at *3 (N.D. Ill. Mar. 31, 2021) (citing *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999)). "The first step in determining whether an unregistered mark or name is entitled to the protection of the trademark laws is to categorize the name according to the nature of the term itself." *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1085 (7th Cir. 1988).

Trademarks are classified along a spectrum of increasing distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992)). A generic mark is one "that is commonly used and does not identify any particular source and, therefore, is not

7

entitled to any trademark protection." *Id.* (citing *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986)). A descriptive mark "is one that describes the ingredients, qualities, or characteristics of an article of trade or a service and, generally, is not protected as a trademark because a merely descriptive mark is a poor means of distinguishing one source of services from another." *Id.* (citations omitted). Finally, suggestive, arbitrary, and fanciful marks are automatically entitled to trademark protection because they are inherently distinctive. *Id.*

While a generic term may not obtain protection as it merely "denote[s] the product," *Liquid Controls*, 802 F.2d at 936, a descriptive term "may receive trademark protection if it acquires secondary meaning in 'the collective consciousness of the relevant community,'" *Platinum Home*, 149 F.3d at 727 (quoting *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1157 (7th Cir. 1996)). Secondary meaning refers to the "mental association in the buyers' minds between the alleged mark and a single source of the product" and "[a] mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark." *Packman*, 267 F.3d at 641 (internal citations omitted).

Plaintiff's allegations regarding protectability are sufficient to survive Defendant's motion to dismiss. Plaintiff provides that it "has acquired common law trademark rights in and to the name 'George the Salon' and confusingly similar variations thereof for its services" "by virtue of its extensive advertising and sale of salon and spa services." [1] ¶ 54. Plaintiff's allegations turn on secondary meaning,

which may be established through "direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying." *Packman*, 267 F.3d at 641. Here, Plaintiff alleges that it has used "George the Salon" for "over 13 years," that it has expended considerable effort and resources promoting its brand and services, and that the "George the Salon" name is associated with Plaintiff and Plaintiff's services. [1] ¶¶ 5–7. In addition, Plaintiff is "recognized as one of Chicago's top salons by fashion and beauty trade publications" and it "has a robust presence to be widely known in the Gold Coast neighborhood, in the Chicago region, and beyond." *Id*. ¶ 8. The complaint sufficiently raises the possibility of relief above the "speculative level" as these allegations go to the heart of secondary meaning, and by extension, distinctiveness. *Two Pesos*, 505 U.S. at 769 ("An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." (emphasis in original)); *see also KJ Korea, Inc.*, 66 F. Supp. 3d at 1014 (finding allegations of secondary meaning sufficient to withstand motion to dismiss); *Fantasia Distrib., Inc. v. Rand Wholesale, Inc.*, No. 14-CV-01546, 2014 WL 6980833, at *2 (N.D. Ill. Dec. 10, 2014) ("In other words, even if [plaintiff] had not registered *any* of the asserted marks, it could still claim a protectable interest in them." (emphasis in original)).[3]

---

[3] Defendant also seeks dismissal by arguing that the mark "consists of the very common male name 'George' coupled with the article 'the' and 'salon,' which is a generic indicator of the types of services offered at Plaintiff's business." [25] at 6; [18] at 7. According to Defendant, the "George the Salon" mark is tainted by genericism and categorically barred from protection. [25] at 6 ("Generic terms, being the least distinctive, receive no trademark protection."). This argument, however, "is premature and more appropriate to a motion for summary judgment." *KJ Korea*, 66 F. Supp. 3d at 1015; *see also*

## B. Likelihood of Confusion

The "'keystone' of trademark infringement is 'likelihood of confusion' as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992). To evaluate the likelihood of confusion, the Seventh Circuit employs a seven-factor balancing test: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). While "[n]o single factor is dispositive," the similarity of the marks, the intent of the defendant, and evidence of actual confusion are "especially important." *Id.* (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001)).

The likelihood of confusion balancing test is "a fact-intensive analysis" that "ordinarily does not lend itself to a motion to dismiss." *Slep-Tone Ent. Corp. v. Coyne*, 41 F. Supp. 3d 707, 715 (N.D. Ill. 2014) (quoting *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006)). It follows that the analysis is "best left for decision after discovery," *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 769 (N.D. Ill. 2008), and this Court's role at the motion to dismiss stage "is limited to assessing whether" Plaintiff pled "facts that plausibly could result

---

*Fantasia Distrib.*, 2014 WL 6980833, at *3 ("Whether [plaintiff's] marks are, in fact, valid and infringed are questions of fact for a later stage in the litigation.").

in a successful outcome on the likelihood of confusion element of its claim." *Slep-Tone*, 41 F. Supp. 3d at 715.

The complaint includes facts relating to six of the seven factors, which is sufficient here to survive a motion to dismiss.[4] *See, e.g.*, *Top Tobacco*, 101 F. Supp. 3d at 792 (denying motion to dismiss where plaintiffs "alleged facts pertaining to at least four of the seven factors"); *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 784 (N.D. Ill. 2011) (denying motion to dismiss where plaintiff alleged five of the seven factors); *Slep-Tone*, 41 F. Supp. 3d at 717 (denying motion to dismiss where complaint did not "allege facts pertinent to three of the seven factors"). The Court will address each factor in turn.

### 1. Similarity between the marks

Plaintiff has adequately pled similarity between its marks and the mark used by Defendant. In its complaint, Plaintiff objects to the "striking" similarity between "George Charles Salon," and its marks, "George the Salon" and "G George the Salon." *Id*. ¶ 32 ("Defendant's business name, 'George Charles Salon,' is strikingly (and confusingly) similar to Plaintiff's business name, 'George the Salon,' and the '542 Mark."); *see also* ¶ 13. In response, Defendant contends that the Court should focus on the details of the "stylized" '542 Mark as registered: "The stylized 'G George the Salon' in a specific color and font, which are claimed as features of the mark, is not mimicked in any way by Defendant in his own use of 'George Charles Salon.'" [25] at 3. Indeed, according to Defendant, "[a] mere glance at this design mark that is

---

[4] The Complaint does not address the fourth factor, the degree of care likely to be exercised by consumers.

11

actually depicted in the registration reveals that it looks and sounds nothing like Defendant's mark." *Id*.

At this stage of litigation, Defendant's argument does not warrant dismissal. Courts in this Circuit have recognized that to "determine whether two marks are similar, we view the marks as a whole," and that "[c]omparing only the non-shared portions of the mark 'would violate the anti-dissection rule' that requires marks to be viewed in their entirety." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929–931 (7th Cir. 2008). The comparison between marks cannot be done in the dark: courts "must compare the marks 'in light of what happens in the marketplace and not merely by looking at the two marks side-by-side.'" *Id.* at 930 (quoting *Sullivan v. CBS Corp.*, 385 F.3d 772, 777 (7th Cir. 2004)). This is because the test is "not whether the public would confuse the *marks*, but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Id.* (quoting *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976) (emphasis in original)). Thus, while Defendant's emphasis on the differences between the marks—particularly between the stylized '542 Mark and "George Charles Salon"— "may have merit in a future stage of litigation, as of now, the argument does not warrant dismissal of the . . . complaint." *Mon Aimee Chocolat, Inc. v. Tushiya LLC*, No. 15 C 4235, 2015 WL 6407758, at *5 (N.D. Ill. Oct. 22, 2015); *see also KJ Korea*, 66 F. Supp. 3d at 1015 (finding similarity where "Plaintiffs' and Defendants' marks all share the same meaning").

### 2. Similarity of the products/services

In considering whether the products or services are similar, "the question is 'whether the products are the kind the public attributes to a single source.'" *Ty, Inc.*, 237 F.3d at 899 (quoting *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1169 (7th Cir. 1986)); *see also Trans Union*, 142 F. Supp. 2d at 1042 ("The question here is whether [the parties'] products and services are related in the minds of the public."). Here, both parties provide "salon and spa services" that include haircuts, coloring services, and hair styling services. [1] ¶¶ 5, 13; [18] at 2; [25] at 4. The products/services are identical.

### 3. Area and manner of concurrent use

The third factor turns on whether "there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *Ty, Inc.*, 237 F.3d at 900 (quoting *Forum Corp. of North America v. Forum, Ltd.*, 903 F.2d 434, 442 (7th Cir. 1990)). Relevant considerations include: (1) the relevant geographical distribution areas; (2) evidence of direct competition between the products; (3) whether the products are sold to consumers in the same type of store; (4) whether the products are sold in the similar section of a particular store; and (5) whether the products are sold through the same marking channels. *Id.*

The complaint addresses this factor by alleging that Defendant's services "are sold, offered for sale, marketed, and advertised in the same channels of trade to the same consumers in the same locale as Plaintiff's services." [1] ¶¶ 31–32. The parties "directly compete with each other in the salon and spa business," and indeed, operate

13

"100 feet" apart. *Id*. ¶¶ 4, 15. Plaintiff's allegations are sufficient: both parties promote their services in the same area, in the same channels of commerce, and have targeted the same general audience.

### 4. Strength of the Plaintiff's mark

Regarding the strength of Plaintiff's mark, courts examine "the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular . . . source." *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 464 (7th Cir. 2000). The "stronger the mark, the more likely it is that encroachment on it will produce confusion." *Sorensen*, 792 F.3d at 731 (quoting *AutoZone*, 543 F.3d at 933).

The complaint alleges facts in support of its marks' respective strength. Plaintiff asserts that "the '542 Mark has developed tremendous goodwill with Plaintiff's customers" and "is immediately associated by purchasers, potential purchasers, and the public as being offered by, and affiliated with, Plaintiff." [1] ¶ 11. In addition, the '542 Mark acquired "secondary meaning long before Defendant entered the market" and, based on its longstanding use in commerce, has become incontestable. *Id*. at ¶¶ 10, 12. These allegations, if true, signify the strength of the '542 Mark.

As for the unregistered "George the Salon" name, the complaint provides that for "over 13 years, Plaintiff has continuously provided salon and spa services in this judicial district and throughout the United States under the 'George the Salon' name." [1] ¶ 6. As discussed above, through its significant expenditure of "time,

14

resources, and effort," Plaintiff "has developed significant goodwill, reputation, and name recognition in the salon and spa business, such that the 'George the Salon' name is associated with Plaintiff and Plaintiff's services." *Id.* ¶ 5. In addition, "[a]s a result of Plaintiff's long-standing sales, promotion, and marketing efforts, the consuming public strongly associates 'George the Salon' with Plaintiff's company." *Id.* ¶ 7. These allegations plausibly suggest that the unregistered mark has acquired distinctiveness through routine and widespread use in commerce.

### 5. Actual confusion

Actual confusion refers to "the confusion of reasonable and prudent consumers, and not confusion among sophisticated members of [the relevant] industry." *Platinum Home*, 149 F.3d at 729. The complaint alleges that "customers of Defendant have called Plaintiff looking for items left at Defendant's salon; called Plaintiff to book, cancel, and/or modify appointments meant for Defendant; left messages with Plaintiff intended for Defendant's stylists; and walked into Plaintiff's salon for appointments booked for Defendant." [1] at ¶ 18. In addition, "customers and potential customers seeking Plaintiff's salon and spa services" have "mistakenly (i) scheduled appointments with Defendant meant for Plaintiff and (ii) walked into Defendant's salon for appointments booked for Plaintiff." *Id.* ¶ 20. This confusion has been aggravated by the fact that Defendant's address and contact information "is listed when searching for Plaintiff's business, 'George the Salon.'" *Id.* ¶ 19; *see also* [25] at 6 ("Defendant concedes that this has been occurring and is an issue that

Defendant would also like fixed."). These assertions sufficiently allege the existence of actual confusion at this stage.

### 6. Intent to "palm off"

Finally, courts examine the defendant's intent. "This factor looks primarily for evidence that defendants are attempting to 'pass off' their products as having come from plaintiff." *Packman*, 267 F.3d at 644 (citing *Liquid Controls*, 802 F.2d at 940). Plaintiff states that despite Defendant's awareness of Plaintiff's services, reputation, and goodwill prior to opening, [1] ¶ 41, "in an effort to confuse the public, deceptively pass itself off as Plaintiff, and unfairly capitalize on Plaintiff's significant goodwill and reputation," it chose to open its salon "100 feet away, and directly across the street, from Plaintiff's long-standing and highly recognized salon," *id.* ¶ 15. Plaintiff points to the fact that Defendant could have located elsewhere or could have "selected an alternative name for its services"—and chose not to—as evidence of Defendant's intent to trade on Plaintiff's goodwill. [1] ¶ 43; [22] at 13.

At the present juncture, the Court finds these allegations sufficient: Plaintiff has alleged that its popularity was well-known, [1] ¶¶ 7–8; that Defendant was aware of both the popularity of Plaintiff's services and the association between the marks and services, *id.* ¶ 41; and that Plaintiff nevertheless decided to use the mark in commerce for its identical services, *id.* ¶¶ 4, 42–43. *See KJ Korea*, 66 F. Supp. 3d at 1017 (crediting, on a motion to dismiss, plaintiff's allegations that defendant knew of the mark's popularity, believed that products bearing the mark would be successful, and subsequently used the mark in commerce).

In sum, for purposes of a motion to dismiss, Plaintiff has adequately alleged that it (1) has a protectable right in the '542 Mark and "George the Salon" name; and (2) Defendant's use of the mark is likely to cause confusion.

## IV. CONCLUSION

In light of the foregoing, Defendant's motion to dismiss [18] is denied.

Dated: March 18, 2022                          Entered:

                                               John Robert Blakey
                                               United States District Judge